1   **WO**

2

3

4

5

6          **IN THE UNITED STATES DISTRICT COURT**

7            **FOR THE DISTRICT OF ARIZONA**

8

9   Paul Melville, Jr.,                  No. CV-18-01703-PHX-JGZ (BGM)

10           Petitioner,

11   v.                                    **REPORT AND RECOMMENDATION**

12   David Shinn, [1] *et al.*,

13           Respondents.

14

15       Currently pending before the Court is Petitioner Paul Melville Jr.'s Petition

16 Pursuant to 28 U.S.C. § 2254 for a Writ of Habeas Corpus by a Person in State Custody

17 (Non-Death Penalty) ("Petition") (Doc. 1).  Respondents have filed a Limited Answer to

18 Petition for Writ of Habeas Corpus ("Answer") (Doc. 14), and Petitioner replied (Doc.

19 17).  The Petition is ripe for adjudication.

20       Pursuant to Rules 72.1 and 72.2 of the Local Rules of Civil Procedure,[2] this matter

21 was referred to Magistrate Judge Macdonald for Report and Recommendation.  The

22 Magistrate Judge recommends that the District Court deny the Petition (Doc. 1) as

23 untimely.

24   . . .

25

26       [1] The Court takes judicial notice, that Charles Ryan is no longer the Director of the
Arizona Department of Corrections ("AZDOC").  As such, the Court will substitute the Director
27 of the AZDOC, David Shinn, as a Respondent pursuant to Rule 25(d) of the Federal Rules of
Civil Procedure.
28       [2] Rules of Practice of the United States District Court for the District of Arizona.

# I.    FACTUAL AND PROCEDURAL BACKGROUND

## A.    *Initial Charge and Sentencing*

The Arizona Court of Appeals stated the facts[3] as follows:

> In early November 2012, J.R. and L.N. stopped by an apartment to pick up L.C. on their way to a bar.  The three were talking in the living room, just inside the doorway, when Melville and his father burst through the front door, guns drawn, and ordered them to the ground.  Melville put a gun to J.R.'s head and ordered him to lie on the ground and be quiet, and Melville's father similarly ordered L.N. to the ground at gunpoint.  Melville then pulled zip-ties from his waistband and bound all three victims' hands behind their backs.

> Melville searched J.R.'s pockets, taking the victim's keys, cell phone, and wallet.  Melville or his father also searched L.N., taking keys, $200 cash, and a cell phone, which Melville's father crushed with his foot.  Melville's father took D.C. upstairs briefly, then returned and laid D.C. on the ground in the living room.  After warning the victims to stay where they were and not to call the police, Melville and his father left the apartment.

> Around the same time, R.C. was walking from a different apartment toward his car, parked one space away from the Melvilles' vehicle.  Melville's father followed R.C. to his car and, when R.C. unlocked the car, grabbed the car door and got in.  Melville's father searched through R.C.'s briefcase bag, then got out of the car and pulled a gun on R.C.  R.C. turned to see Melville's uncle, in the driver's seat of the Melvilles' vehicle, pointing another gun through the window.  Melville said "he's not the one" or "I don't think he is one of them," and Melville's father moved to the Melvilles' car, and they drove away.

> When J.R., L.N., and D.C. removed the zip-ties, they left the apartment and found R.C. on the phone with 911, and the police arrived within minutes.  Melville, his father, and his uncle were later arrested and each charged with first-degree burglary, three counts of kidnapping, three counts of armed robbery, and four counts of aggravated assault.

> Before trial, the State alleged that in 2005 Melville had committed

---

[3] As these state court findings are entitled to a presumption of correctness and Petitioner has failed to show by clear and convincing evidence that the findings are erroneous, the Court hereby adopts these factual findings.  28 U.S.C. § 2254(e)(1); *Schriro v. Landrigan*, 550 U.S. 465, 473–74, 127 S. Ct. 1933, 1940, 167 L. Ed. 2d 836 (2007); *Wainwright v. Witt*, 469 U.S. 412, 426, 105 S. Ct. 844, 853, 83 L. Ed. 2d 841 (1985); *Cf. Rose v. Lundy*, 455 U.S. 509, 519, 102 S. Ct. 1198, 1204, 71 L.Ed.2d 379 (1982).

and been convicted of a felony in New York — "Criminal Possession of a Loaded Firearm, 3rd Degree," N.Y. Penal Law § 265.02(4) (McKinney 2005) — and requested a ruling under Arizona Rule of Evidence 609 allowing the State to impeach Melville with his prior conviction were he to testify at trial.  Melville moved to preclude impeachment with the New York conviction.  Melville conceded that he had committed the offense, but he argued it should not be used for impeachment because the underlying conduct (possession of a loaded firearm) would not be a crime in Arizona, the relevant portion of the New York criminal statute had since been repealed, the underlying conduct was unrelated to truthfulness, the prior conviction was relatively old, and he had no subsequent convictions.

Melville testified at trial and contradicted the victims' version of events.  He testified that he and his father had gone to the apartment that day to buy 10 pounds of marijuana from D.C. for $12,000.  Melville understood L.N. to be D.C.'s "connect."  When Melville discovered the marijuana was neither the quality nor the quantity agreed upon, D.C. reached for a gun in his waistband.  Melville claimed that he then tussled with D.C. and took D.C.'s handgun; Melville's father stopped L.N. from reaching into his pocket and took L.N.'s pistol; J.R. was unable to reach another handgun in the kitchen.  Melville asserted that his father briefly took D.C. upstairs to make sure no one else was in the apartment.  Melville used zip-ties he found in the kitchen to bind the victims' hands and took keys from a bookstand to keep from being followed as he and his father left the apartment.  On their way to their car, Melville saw R.C. pause suspiciously in the parking lot, and Melville's father then searched R.C.'s car for a firearm, but never drew a gun.

After Melville's testimony on direct, the superior court addressed the State's request to impeach Melville with the New York conviction.  Melville's counsel did not dispute the existence of the prior conviction, but again reiterated his argument that allowing impeachment with the New York conviction would be unfairly prejudicial, particularly in light of the fact that although a crime in New York, the underlying conduct would not be a crime under Arizona law.  The court found that the probative value of the conviction (which the court ordered sanitized) outweighed its prejudicial effect and allowed the State to impeach Melville with the fact of the New York conviction.

On cross-examination, during a series of questions challenging Melville's credibility, the State asked Melville a single question about the New York conviction:

Q.     Do you have a prior conviction?

- 3 -

> A.   Correct.
>
> After the court instructed the jury that it could consider evidence of Melville's prior conviction "only as it may [a]ffect a defendant's believability as a witness" and not as evidence of guilt of the charged offense, the State referred to the prior conviction once in closing, stating:
>
>> In terms of credibility, the jury instructions tell you, you listened to Paul Melville, Jr. testify?   It's completely acceptable to take his prior conviction and you weight that in the balancing test of credibility.

Answer (Doc. 14), Ariz. Ct. of Appeals, No. 2 CA-CR 13-0639, Mem. Decision 7/29/2014 (Exh. "D") (Doc. 14-1) at 58–60.[4]   The jury found Petitioner guilty of two (2) counts of armed robbery and four (4) counts of aggravated assault, not guilty of first degree burglary, and could not reach a verdict on the three (3) kidnapping charges.   *Id.*, Exh. "D" at 60, 60 n.1.   Petitioner was sentenced to terms totaling 18 years of imprisonment.   *Id.*, Exh. "D" at 60.

### B.   Direct Appeal

On September 4, 2013, Petitioner filed a Notice of Appeal.   Answer (Doc. 14), Ariz. Superior Ct., Maricopa Cnty., No. CR2012-009547-002, Docket[5]—Not. of Appeal 9/4/2013 (Exh. "A") (Doc. 14-1).[6]   On February 7, 2014, counsel for Petitioner filed an Opening Brief asserting a single issue for review.   Answer (Doc. 14), Ariz. Ct. of Appeals, No. 2 CA-CR 13-0639, Appellant's Opening Br. 2/7/2014 (Exh. "B") (Docs. 14-1).   Petitioner argued that the "trial court abuse[d] its discretion in allowing

---

[4] Page citations refer to the CM/ECF page number for ease of reference.  Also, although Petitioner has attached the state court records to his Petition (Doc. 1) and the Court has reviewed the same, the Court references only exhibits included with the Government's Answer (Doc. 14) for clarity.

[5] "The court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b).  Arizona state court orders and proceedings are proper material for judicial notice.  *See Dawson v. Mahoney*, 451 F.3d 550, 551 n.1 (9th Cir. 2006) (taking judicial notice of orders and proceedings before another tribunal).

[6] Unless noted otherwise, superior court case records are derived from *State v. Melville, Jr.*, Ariz. Superior Ct., Maricopa Cnty., No. CR2012-009547-002.

defendant's credibility to be attacked with evidence of a prior conviction when the conviction [wa]s seven years old, was for conduct that is not a crime in Arizona and was repealed in the jurisdiction where [Petitioner] was convicted, and where the crime did not reflect on [Petitioner's] character for truthfulness." *Id.*, Exh. "B" at 23.  On July 29, 2014, the Arizona Court of Appeals affirmed Petitioner's convictions and sentences. Answer (Doc. 14), Ariz. Ct. App., No. 2 CA-CR 13-0639, Mem. Decision 7/29/2014 (Exh. "D") (Doc. 14-1).

The court of appeals reviewed Rule 609, Arizona Rules of Evidence, permitting "evidence of a prior conviction punishable by more than one year's imprisonment . . . if the probative value of the evidence outweighs its prejudicial effect to th[e] defendant." *Id.*, Exh. "D" at 61.  The appellate court observed that "[s]uch a felony-grade conviction is material to credibility because '[t]he perpetrator of a major criminal act has demonstrated such a lack of scruples as to show a willingness to give false testimony.'" *Id.*, Exh. "D" at 61 (quoting *State v. Williams*, 144 Ariz. 433, 438, 698 P.2d 678, 683 (Ariz. 1985)) (2d alteration in original).  The appellate court went on to outline the factors utilized in weighing probative value against prejudicial effect.  Answer (Doc. 14), Exh. "D" at 61 (citing *Williams*, 144 Ariz. at 438, 698 P.2d at 683; then citing *State v Noble*, 126 Ariz. 41, 43, 612 P.3d 497, 499 (Ariz. 1980)).

The appellate court reviewed the trial "court's determination for a clear abuse of discretion."  Answer (Doc. 14), Exh. "D" at 61 (citing *State v. Green*, 200 Ariz. 496, 498, ¶ 7, 29 P.3d 271, 273 (Ariz. 2001); then citing *Williams*, 144 Ariz. at 439, 698 P.2d at 684).  After reviewing the various factors argued by Petitioner to support exclusion of the conviction, the appellate court held that "[t]he superior court appropriately determined that the probative value of the New York conviction outweighed its prejudicial effect." Answer (Doc. 14), Exh. "D" at 63.  The appellate court further observed that "the court allowed impeachment only with a sanitized version of the prior – the fact of conviction but no the nature of the offense – which avoided any potential prejudice from similarity between the prior and instant offenses (insofar as both involved a firearm).  *Id.*, Exh. "D"

at 63 (citing *State v. Beasley*, 205 Ariz. 334, 338–40, ¶¶ 19–26, 70 P.3d 463, 467–69 (Ct. App. 2003)).

On October 17, 2014, the mandate issued indicating that Petitioner had not filed a motion for reconsideration or sought review with the Arizona Supreme Court.  Answer (Doc. 16), Ariz. Ct. App., No. 2 CA-CR 13-0639, Mandate 10/17/2014 (Exh. "E") (Doc. 14-1).

### C. *Post-Conviction Relief Proceeding*

On October 1, 2014, Petitioner filed his Notice of Post-Conviction Relief ("PCR").  Answer (Doc. 14), Def.'s Not. of PCR 10/1/2014 (Exh. "F") (Doc. 14-1).  Petitioner was appointed counsel and a briefing schedule was set.  Answer (Doc. 14), Initiation of Rule 32 Proceeding Following Trial (Exh. "G") (Doc. 14-1).  On December 3, 2014, Petitioner filed his Petition for Post Conviction Relief.  Answer (Doc. 14), Def.'s Pet. for PCR 12/3/2014 (Exh. "H") (Doc. 14-1).  Petitioner asserted ineffective assistance of both trial and appellate counsel.  *Id.*, Exh. "H" at 73–74.  Petitioner asserted that the trial court judge improperly commented on the evidence, and defense counsel was ineffective for failing to seek a mistrial.  *Id.*, Exh. "H" at 77–79.  Petitioner further alleged that appellate counsel was ineffective by failing to seek relief for the same on appeal.  *Id.*, Exh. "H" at 78–79.

The State of Arizona filed its response.  *See* Answer (Doc. 14), Resp. to Pet. for PCR 1/20/2015 (Exh. "I") (Doc. 14-1).  The State urged that although "the transcript reveals the trial court misread one of th[e] [jury] instructions[,]" the jurors had copies of the written jury instructions that were correct.  *Id.*, Exh. "I" at 88–91.  The State further asserted that this mistake did not rise to the level of structural error, especially since "the jury found all three defendant's not guilty of count 1 and . . . was unable to reach a verdict for all three defendants in counts 2, 3, and 4."  *Id.*, Exh. "I" at 92.  The State concluded that Petitioner was unable to show that either trial or appellate counsel's actions were deficient.  *Id.*, Exh. "I" at 92–93.

. . .

### 1.  **PCR Order**

On March 18, 2015, the Rule 32 court denied Petitioner's petition.  *See* Answer (Doc. 14), Minute Entry 3/20/2015 (Exh. "J") (Doc. 14).  The Rule 32 court found that Petitioner omitted from his Petition the immediately following the trial court's error, it instructed the jury that "[t]he State must prove guilty (sic) beyond a reasonable doubt upon the evidence." *Id.*, Exh. "J" at 96–97.  The Rule 32 court further noted that "each juror was given a copy of the final jury instructions that contained the correct statement that 'the State must prove guilt beyond a reasonable doubt based upon the evidence' in the instruction labeled Defendant Need Not Testify." *Id.*, Exh. "J" at 97.  The Rule 32 court also observed "that the State's burden of proof 'beyond a reasonable doubt' was conveyed orally by the Court to the jurors on at least four occasions during the reading of the instructions[,] . . . [and] the State's burden of proof was stated numerous times in the written instructions." *Id.*, Exh. "J" at 97.  The Rule 32 court held that Petitioner "failed to state a colorable claim of ineffective assistance of counsel." *Id.*, Exh. "J" at 97 (citing *State v. Santanna*, 153 Ariz. 147, 149, 735 P.2d 757, 759 (Ariz. 1987)).  The Rule 32 court further found that Petitioner "ha[d] failed to show that any deficient performance prejudiced his defense."  Answer (Doc. 14), Exh. "J" at 97 (citing *Strickland v. Washington*, 466 U.S. 668, 686 (1984)).

### 2.  **PCR Appeal**

On April 20, 2015, Petitioner sought review of the denial of his PCR petition by the Arizona Court of Appeals.  *See* Answer (Doc. 14), Ct. App., State of Ariz., No. 1 CA-CR-15-0259-PR-PC, Pet.'s Pet. for Review (Exh. "K") (Doc. 14-1).  Petitioner asserted three (3) issues for review.  *See id.*, Exh. "K."  First, Petitioner alleged ineffective assistance of trial counsel based upon his failure to move for a mistrial after the court's allegedly prejudicial comment on the evidence.  *Id.*, Exh. "K" at 99.  Second, Petitioner alleged ineffective assistance of trial counsel for an alleged failure to secure a "beneficial plea."  *Id.*, Exh. "K" at 99.  Third, Petitioner alleged ineffective assistance of appellate counsel for failing to raise ineffective assistance of trial counsel as alleged in Issue No. 1.

1    *Id.*, Exh. "K" at 100.

2         On April 27, 2015, the State filed its response and asserted that Petitioner had

3    failed to address how the Rule 32 court had abused its discretion when it dismissed

4    Petitioner's ineffective assistance of counsel claims as non-meritorious.  *See* Answer

5    (Doc. 14), Resp. to Pet. for Review (Exh. "L") (Doc. 14-1).  The State further observed

6    that Petitioner raised his claim regarding trial counsel's alleged failure to secure a

7    favorable plea offer for the first time in his petitioner for review.  *Id.*, Exh. "L" at 115.

8         On April 18, 2017, the Arizona Court of Appeals granted review, but denied relief.

9    *See* Answer (Doc. 14), Ct. App., State of Ariz., No. 2 CA-CR 15-0259 PRPC, Mem.

10   Decision 4/18/2017 (Exh. "M") (Doc. 14-1).  The appellate court found that the Rule 32

11   court did not abuse its discretion.  *Id.*, Exh. "M" at 120.  The appellate court observed

12   that "[t]he record supports the superior court's findings regarding the otherwise properly

13   instructed jury[,] . . . [and] note[d] that the jury did not return guilty verdicts on all the

14   charges it considered, thus indicating the jurors properly understood the State's burden of

15   proof."  *Id.*, Exh. "M" at 120.  Finally, the appellate court declined to address Petitioner's

16   ineffective assistance of counsel claim related to his rejection of a plea offer, because it

17   was raised for the first time on appeal.  *Id.*, Exh. "M" at 120 (citing *State v. Wagstaff*, 161

18   Ariz. 66, 71, 775 P.2d 1130, 1135 (Ariz. Ct. App. 1988)).  On June 7, 2017, the Arizona

19   Court of Appeals issued its mandate.  Answer (Doc. 14), Ct. App., State of Ariz., No. 2

20   CA-CR 15-0259 PRPC, Mandate 6/7/2017 (Exh. "N") (Doc. 14-1).

21         **D.  The Instant Habeas Proceeding**

22         On June 4, 2018, Petitioner filed his Petition Pursuant to 28 U.S.C. § 2254 for a

23   Writ of Habeas Corpus by a Person in State Custody (Non-Death Penalty) (Doc. 1).

24   Petitioner asserts three (3) grounds for relief.  First, Petitioner alleges that the trial court

25   abused its discretion in violation of his right to a fair trial and impartial jury when it

26   allowed Petitioner's "credibility to be attacked with evidence of a prior conviction that

27   was seven years old[.]"  *Id.* at 6.  Second, Petitioner asserts that trial counsel was

28   ineffective for allegedly failing to "timely object or move for a mistrial [when] . . .

[d]uring the jury instruction phase [the] trial court improperly commented on the evidence and gave erroneous jury instructions[.]" *Id.* at 7.  Third, Petitioner asserts that his appellate counsel was ineffective because "[a]lthough petitioner had submitted a request to appellate counsel to raise the claim of trial court abuse of discretion on direct appeals [sic] pertaining to the trial court's erroneous jury instructions but during an [sic] phone conference appellate counsel stated that she would raise 'the claims she wants' and if the petitioner kept asking about such claims she would not file any and withdraw from his case." *Id.* at 8.  Petitioner further alleges that he "never spoke with appellate counsel again or received any legal mail from her until 08/09/14." *Id.*

On November 28, 2018, Respondents filed their Limited Answer (Doc. 14), and Petitioner did not reply.

## II.   STATUTE OF LIMITATIONS

### A.   *Timeliness*

As a threshold matter, the Court must consider whether Petitioner's petition is barred by the statute of limitation. *See White v. Klizkie*, 281 F.3d 920, 921–22 (9th Cir. 2002).  The AEDPA mandates that a one-year statute of limitations applies to applications for a writ of habeas corpus by a person in state custody.  28 U.S.C. § 2244(d)(1).  Section 2244(d)(1) provides that the limitations period shall run from the latest of:

> (A)   the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B)   the date on which the impediment to filing an application created by the State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C)   the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D)   the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1); *Shannon v. Newland*, 410 F.3d 1083 (9th Cir. 2005).  "The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection."  28 U.S.C. § 2244(d)(2).

The other subsections being inapplicable, Petitioner must have filed his habeas petition within one year from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review."  28 U.S.C. § 2244(d)(1)(A); *see also McQuiggin v. Perkins*, 569 U.S. 383, 133 S.Ct. 1924, 1929, 185 L.Ed.2d 1019 (2013).  On July 29, 2014, the Arizona Court of Appeals affirmed Petitioner's convictions and sentences on direct review.  *See* Answer (Doc. 14), Ariz. Ct. App., No. 2 CA-CR 13-0639, Mem. Decision 7/29/2014 (Exh. "D") (Doc. 14-1).  As such, Petitioner's judgment became final on September 2, 2014, after the expiration of the thirty-five (35) day period to seek review in the Arizona Supreme Court.  Ariz. R. Crim. P. 31.19(a)[7] (a party has thirty (30) days in which to file a petition for review); Ariz. R. Crim. P. 1.3(a)[8] ("[w]henever a party has the right or is required to take some action within a prescribed period of service of a notice or other paper . . . five calendar days shall be added to the prescribed period.").

As such, pursuant to the AEDPA, Petitioner's one-year limitation period expired, absent tolling, on September 2, 2015.  *See White*, 281 F.3d at 924 ("[T]he question of when a conviction becomes final, so as to start the running of the statute of limitations under § 2244(d)(1)(A), is fundamentally different from the question of how long the statute of limitations is tolled under § 2244(d)(2).").  Petitioner filed his Petition (Doc. 1) on June 4, 2018.  Therefore, absent tolling, the Petition (Doc. 1) is untimely.

### B.    *Statutory Tolling of the Limitations Period*

The limitations period is tolled during the time in "which a properly filed

---

[7] In 2018 this section was renumbered to Ariz. R. Crim. P. 31.21(b)(2)(A).

[8] In 2018 this section was modified.  The current rule excepts court-generated documents from additional time.  *See* Ariz. R. Crim. P. 1.3(a)(5).

application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending[.]" 28 U.S.C. § 2244(d)(2); *Allen v. Siebert*, 552 U.S. 3, 4, 128 S.Ct. 2, 3, 169 L.Ed.2d 329 (2007).   An application for State post-conviction relief is "'properly filed' when its delivery and acceptance are in compliance with the applicable laws and rules governing filings." *Artuz v. Bennett*, 531 U.S. 4, 8, 121 S.Ct. 361, 364, 148 L.Ed.2d 213 (2000).  Statutory tolling of the limitations period ends "[a]fter the State's highest court has issued its mandate or denied review, [because] no other state avenues for relief remain open." *Lawrence v. Florida*, 549 U.S. 327, 332, 127 S.Ct. 1079, 1083, 166 L.Ed.2d 924 (2007); *see also Hemmerle v. Schriro*, 495 F.3d 1069, 1077 (9th Cir. 2007) (collateral proceeding "determined" when the Arizona Supreme Court denied petition for review).

"[I]n Arizona, post-conviction 'proceedings begin with the filing of the Notice.'" *Hemmerle*, 495 F.3d at 1074 (quoting *Isley v. Arizona Dept. of Corrections*, 383 F.3d 1054 (9th Cir. 2004)).  Petitioner filed his Notice of Post-Conviction Relief on October 1, 2014.  Answer (Doc. 14), Def.'s Not. of PCR 10/1/2014 (Exh. "F") (Doc. 14-1).  This PCR notice was "properly filed," and therefore tolled AEDPA's one-year statute of limitations.  At this point, twenty-nine (29) days of the one-year limitations period had elapsed.  On March 18, 2015, the Rule 32 court denied Petitioner's petition.  *See* Answer (Doc. 14), Minute Entry 3/20/2015 (Exh. "J") (Doc. 14).  On April 20, 2015, Petitioner timely sought review by the Arizona Court of Appeals of the denial of his PCR petition.  *See* Answer (Doc. 14), Ct. App., State of Ariz., No. 1 CA-CR-15-0259-PR-PC, Pet.'s Pet. for Review (Exh. "K") (Doc. 14-1); Ariz. R. Crim. P. 32.9(c)[9] (any part aggrieved by a trial court's post-conviction relief decision may petition the appropriate appellate court for review within thirty (30) days); Ariz. R. Crim. P. 1.3(a)[10] (addition of five calendar days to a prescribed period); *State v. Savage*, 117 Ariz. 535, 536, 573 P.2d 1388, 1389 (1978) (applying Ariz. R. Crim. P. 1.3 applies to petitions for review in PCR

---

[9] This refers to the pre-2018 version of the rule.

[10] This refers to the pre-2018 version of the rule.

proceedings).   On April 18, 2017, the Arizona Court of Appeals granted review, but denied relief.   *See* Answer (Doc. 14), Ct. App., State of Ariz., No. 2 CA-CR 15-0259 PRPC, Mem. Decision 4/18/2017 (Exh. "M") (Doc. 14-1).   Petitioner did not seek review by the Arizona Supreme Court.

An application for state post-conviction relief remains "pending" until is "has achieved final resolution through the State's post-conviction procedure[.]"   *Celaya v. Stewart*, 691 F. Supp. 2d 1046, 1072 (D. Ariz. 2010) (citing *Carey v. Saffold*, 536 U.S. 214, 219–20, 122 S. Ct. 2134, 153 L. Ed. 2d 260 (2002); then citing *Hemmerle v. Schriro*, 495 F.3d 1069, 1077 (9th Cir. 2007)).   Rule 31.23(a)(1), Arizona Rules of Criminal Procedure, provides "[i]f there has been no motion for reconsideration and no petition for review filed, the clerk of the Court of Appeals shall issue the mandate at the expiration of the time for the filing of such motion or petition."   Ariz. R. Crim. P. 31.23(a)(1) (2017).   "Arizona courts have expressly stated that a judgment is not final until the mandate has issued."   *Celaya*, 691 F. Supp. 2d at 1074 (reviewing cases).   As such, "[i]n Arizona, review is pending until the mandate has issued when the court of appeals grants review of a petition, but ultimately denies the petition."   *Ochoa v. Ryan*, 2019 WL 1149924, at *4 (D. Ariz. Mar. 13, 2019).   Accordingly, the Court finds that Petitioner's PCR petition remained pending until June 7, 2017 when the Arizona Court of Appeals issued its mandate.[11]   Answer (Doc. 14), Ct. App., State of Ariz. No. 2 CA-CR 15-0259 PRPC, Mandate 6/7/2017 (Exh. "N") (Doc. 14-1).

Petitioner had 336 days from June 7, 2017 to file his habeas petition.   Therefore, Petitioner had until May 9, 2018 to file his habeas petition; however, he did not file his Petition (Doc. 1) until June 4, 2018.   The Court finds absent equitable tolling, Petitioner's Petition (Doc. 1) is untimely.

---

[11] Petitioner argues that he "had 90 days to file a writ of certiorari to the United States Supreme Court."   Reply (Doc. 17).   Petitioner, however, did not seek review with the Arizona Supreme Court and therefore was not entitled to seek certiorari.   *See* Sup. Ct. R. 13 ("Unless otherwise provided by law, a petition for a writ of certiorari to review a judgment in any case, civil or criminal, *entered by a state court of last resort* . . . is timely when it is filed with the Clerk of this Court within 90 days after entry of the judgment." (emphasis added)).

1

### C.     Equitable Tolling of the Limitations Period

2      The Supreme Court of the United States has held "that § 2244(d) is subject to

3  equitable tolling in appropriate cases."  *Holland v. Florida*, 560 U.S. 631, 645, 130 S. Ct.

4  2549, 2560, 177 L. Ed. 2d 130 (2010).  The Ninth Circuit Court of Appeals "will permit

5  equitable tolling of AEDPA's limitations period only if extraordinary circumstances

6  beyond a prisoner's control make it impossible to file a petition on time." *Miles v. Prunty*,

7  187 F.3d 1104, 1107 (9th Cir. 1999) (quotations and citations omitted).   Moreover,

8  Petitioner "bears the burden of establishing two elements: (1) that he has been pursuing

9  his rights diligently, and (2) that some extraordinary circumstance stood in his way."

10  *Pace v. DiGuglielmo*, 544 U.S. 408, 418, 125 S. Ct. 1807, 1814, 161 L. Ed. 2d 669

11  (2005); *see also Holland*, 130 S. Ct. at 2562 (quoting *Pace*).

12      Petitioner's Petition (Doc. 1) and Reply (Doc. 17) are devoid of any facts to

13  support that he had been pursuing his rights diligently.  Furthermore, Petitioner has failed

14  to meet the "very high threshold" of establishing that extraordinary circumstances beyond

15  his control made it impossible for him to timely file a habeas petition *and* that those

16  extraordinary circumstances were the cause of his untimeliness.  *United States v. Battles*,

17  362 F.3d 1195, 1197 (9th Cir. 2004).   As such, Petitioner is not entitled to equitable

18  tolling and his habeas petition is untimely.   The Court recommends that Petitioner's

19  Petition (Doc. 1) be denied because it is untimely.

20

21  **III.   CONCLUSION**

22      Based upon the foregoing, the Court finds that Petitioner's Petition (Doc. 1) is

23  untimely and should be denied.

24

25  **IV.   RECOMMENDATION**

26      For the reasons delineated above, the Magistrate Judge recommends that the

27  District Judge enter an order DENYING Petitioner's Petition Pursuant to 28 U.S.C. §

28  2254 for a Writ of Habeas Corpus by a Person in State Custody (Non-Death Penalty)

(Doc. 1).

Pursuant to 28 U.S.C. § 636(b) and Rule 72(b)(2), Federal Rules of Civil Procedure, any party may serve and file written objections within fourteen (14) days after being served with a copy of this Report and Recommendation.  A party may respond to another party's objections within fourteen (14) days after being served with a copy.  Fed. R. Civ. P. 72(b)(2).  No replies shall be filed unless leave is granted from the District Court.  If objections are filed, the parties should use the following case number:  **CV-18-1703-PHX-JGZ**.

Failure to file timely objections to any factual or legal determination of the Magistrate Judge may result in waiver of the right of review.

Dated this 6th day of November, 2020.

Honorable Bruce G. Macdonald
United States Magistrate Judge