1

2      **WO**

3

4

5

6                    **IN THE UNITED STATES DISTRICT COURT**

7                        **FOR THE DISTRICT OF ARIZONA**

8

9      Paul Melville, Jr.,                          No. CV-18-01703-PHX-JGZ

10                     Petitioner,                   **ORDER**

11     v.

12     Charles L Ryan, et al.,

13                     Respondents.

14

15         Pending before the Court is Petitioner Paul Melville Jr.'s Petition Under 28 U.S.C.

16     § 2254 for a Writ of Habeas Corpus by a Person in State Custody. (Doc. 1.) The petition is

17     fully briefed. (Docs. 6, 41, 44.) The Court will deny the petition and dismiss this case.

18     **1.    BACKGROUND**

19         In early November 2012, J.R. and L.N. stopped by an apartment to pick up L.C. on

20     their way to a bar. *State v. Melville*, No. 1 CA-CR 13-0639, 2014 WL 3881977, at ¶ 2

21     (Ariz. Ct. App. July 29, 2014).[1] The three were talking in the living room, just inside the

22     doorway, when Melville and his father burst through the front door, guns drawn, and

23     ordered them to the ground. *Id.* Melville put a gun to J.R.'s head and ordered him to lie on

24     the ground and be quiet, and Melville's father similarly ordered L.N. to the ground at

25     gunpoint. *Id.* Melville then pulled zip-ties from his waistband and bound all three victims'

26     hands behind their backs. *Id.*

27     ───────────────
       [1] The Court adopts the facts in the background section as recited by the Arizona Court of
28     Appeals. *See* 28 U.S.C. § 2254(e)(1). The facts are afforded a presumption of correctness
       that may be rebutted only by clear and convincing evidence. *Id.*; *Schriro v. Landrigan*, 550
       U.S. 465, 473-74 (2007). Petitioner does not to challenge these facts.

1    Melville searched J.R.'s pockets, taking the victim's keys, cell phone, and wallet.

2    *Id.* at ¶ 3. Melville or his father also searched L.N., taking keys, $200 cash, and a cell

3    phone, which Melville's father crushed with his foot. *Id*. Melville's father took D.C. upstairs

4    briefly, then returned and laid D.C. on the ground in the living room. *Id*. After warning the

5    victims to stay where they were and to not call the police, Melville and his father left the

6    apartment. *Id*.

7    Around the same time, R.C. was walking from a different apartment toward his car,

8    parked one space away from the Melvilles' vehicle. *Id.* at ¶ 4. Melville's father followed

9    R.C. to his car and, when R.C. unlocked the car, grabbed the car door, and got in. *Id*.

10   Melville's father searched through R.C.'s briefcase bag, then got out of the car and pulled

11   a gun on R.C. *Id*.  R.C. turned to see Melville's uncle, in the driver's seat of the Melvilles'

12   vehicle, pointing another gun through the window. *Id.* Melville said, "he's not the one" or

13   "I don't think he is one of them," and Melville's father moved to the Melvilles' car, and they

14   drove away. *Id*.

15   When J.R., L.N., and D.C. removed the zip-ties, they left the apartment and found

16   R.C. on the phone with 911, and the police arrived within minutes. *Id*. at ¶ 5. Melville, his

17   father, and his uncle were later arrested, and each charged with first-degree burglary, three

18   counts of kidnapping, three counts of armed robbery, and four counts of aggravated assault.

19   *Id*.

20   Prior to trial, the State alleged that in 2005 Melville was convicted in New York of

21   Criminal Possession of a Loaded Firearm, a felony, and requested a ruling under Arizona

22   Rule of Evidence 609 allowing the State to impeach Melville with the conviction. *Id.* at ¶

23   6. Melville moved to preclude use of the conviction, but after Melville testified at trial on

24   direct, the trial court allowed the State to impeach Melville with the fact of the conviction.

25   *Id*. at ¶¶ 6, 8.

26   After all the evidence was presented, the trial court provided the jurors with copies

27   of the final jury instructions and read the instructions. (Doc. 41-1 at 108.) During

28   instruction, the court misread the instruction pertaining to a defendant's right to not testify.

1
2

The correct instruction, included in the juror's instructions, read:

DEFENDANT NEED NOT TESTIFY

3

4

5

6

The State must prove guilt beyond a reasonable doubt based on the evidence. You must not conclude that the defendant is likely to be guilty because the defendant did not testify. The defendant is not required to testify. The decision on whether or not to testify is left to the defendant acting with the advice of an attorney. You must not let this choice affect your deliberations in any way.

7

8

9

10

(Doc. 41-1 at 28.)  The court incorrectly read the first sentence, stating, according to the transcript: "The State *has* proved guilt beyond a reasonable doubt based upon the evidence." (*See* Doc. 41-1 at 111:20-21(emphasis added).) None of the attorneys objected to the court's mistake.

11

12

13

14

15

Prior to the misread instruction, the court had correctly instructed the jury on the State's burden to prove guilt beyond a reasonable doubt. (Doc. 41-1 at 110:20-111:5.)[2] After the misread instruction, the court's other instructions referred to the state's obligation to prove the defendants' guilt. (*See generally id*. at 111-118.) The prosecutor and defense counsel argued the correct burden of proof in closing arguments. (*Id.* at 142, 154, 161.)

16

17

18

The jury found Melville guilty of two counts of armed robbery and four counts of aggravated assault, acquitted him of one count of first-degree burglary, and could not reach a verdict on the three kidnapping charges. *Melville*, No. 1 CA-CR 13-0639, 2014 WL

19

---

[2] According to the transcript, the court stated:

20

21

22

23

24

The law does not require a defendant for [sic] prove innocence. Every defendant is presumed by law to be innocent. You must start with the presumption that the defendants are innocent. The State has the burden of proving the defendant guilty beyond a reasonable doubt. This means that the State must prove each element of each charged [sic] of each charge beyond a reasonable doubt. In civil cases it is only necessary to prove that a fact is more likely true than not or that its truth is highly probable. In criminal cases such as this, the State's proof must be more powerful than that. It must be beyond a reasonable doubt. Proof beyond a reasonable doubt is proof that leaves you firmly convinced of the defendants' guilt.

25

26

27

28

There are very few things in this world that we know with absolute certainty, and in criminal cases the law does not require proof that overcomes every doubt. If based on your consideration of the evidence you are firmly convinced tat the defendant is guilty of the crime charged you must find him guilty. If, on the other hand, you think there is a real possibility that he is not guilty, you must give him the benefit of the doubt and find him not guilty.

 (Doc. 41-1 at 110:17-111:14.)

1   3881977, at ¶ 10.

2   **2.      PROCEDURAL HISTORY**

3         A.      Direct Appeal

4         Melville timely filed an appeal with the Arizona Court of Appeals, presenting only

5   one issue for review: whether the trial court abused its discretion in permitting the State to

6   use his prior conviction for impeachment. *See Melville*, No. 1 CA-CR 13-0639, 2014 WL

7   3881977. On July 29, 2014, the Arizona Court of Appeals affirmed Melville's convictions

8   and sentences. *Id* at ¶ 18. Melville did not seek review by the Arizona Supreme Court.

9         B.      Post-Conviction Relief

10        On September 26, 2014, Melville timely filed a Notice of Post-Conviction Relief

11  (PCR). (Doc. 14-1 at 67-68.) On December 3, 2014, Melville's counsel filed a petition

12  alleging two claims for relief: (1) ineffective assistance of trial counsel based on counsel's

13  failure to move for a mistrial after the judge "improperly commented on the evidence and

14  gave erroneous jury instructions" and (2) ineffective assistance of appellate counsel based

15  on counsel's failure to raise trial counsel's ineffectiveness on appeal. (*Id*. at 73-74.) On

16  March 18, 2015, the PCR court issued an order holding that Melville's claims were

17  meritless and that he failed to prove deficient performance or prejudice by either of his

18  attorneys. (*Id*. at 96-97.)

19        Melville filed a pro per petition for review with the Arizona Court of Appeals,

20  raising the same ineffective assistance of counsel claims as well as a new claim that his

21  counsel was also ineffective during plea bargaining. (*Id*. at 118, 120.) On April 18, 2017,

22  the Arizona Court of Appeals denied Melville's petition finding no abuse of discretion by

23  the PCR court. (*Id.* at 120.) Melville did not file a motion for reconsideration or petition

24  for review by the Arizona Supreme Court, and the Court of Appeals issued its mandate on

25  June 7, 2017. (*Id*. at 122.)

26        C.      Federal Habeas Corpus Petition

27        On June 4, 2018, Melville filed a federal habeas corpus petition, asserting three

28  grounds for relief. (Doc. 1.) In Ground One, Melville argues the state court abused its

1      discretion in allowing the State to impeach him with his prior conviction. (*Id*. at 6.) In

2      Ground Two, Melville argues that his trial counsel was ineffective in failing to object or

3      move for a mistrial after the state court erroneously instructed the jury that the state had

4      met its burden of proof. (*Id.* at 7.) In Ground Three, Melville asserts that his appellate

5      counsel was ineffective in failing to raise trial counsel's ineffectiveness and in failing to

6      communicate with him about the claims to be raised. (*Id.* at 8.)

7           After counsel was appointed to represent Melville, (Doc. 34), Melville filed a

8      Supplemental Reply in Support of the Petition, (Doc. 44). In the Supplemental Reply,

9      Melville concedes that Ground One is noncognizable and the failure-to-communicate

10     component of Ground Three does not state a valid claim of ineffective assistance of

11     appellate counsel. (Doc. 44 at 1-2, 5-6.) Consequently, the Court will only address

12     Melville's remaining claims of ineffective assistance of counsel in Grounds Two and

13     Three.

14     **3.      LEGAL STANDARD**

15          Federal district courts are instructed to entertain habeas applications on behalf of

16     persons in custody pursuant to state court judgments "only on the ground that he is in

17     custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C.

18     § 2254(a). A court may not grant habeas relief unless the state court's decision was (1)

19     "contrary to, or involved an unreasonable application of, clearly established Federal law,

20     as determined by the Supreme Court," or (2) "was based on an unreasonable determination

21     of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. §

22     2254(d); *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011). A decision involves an

23     unreasonable application of clearly established federal law if it "identifies the correct

24     governing legal principle but unreasonably applies that principle to the facts of the

25     prisoner's case." *Vega v. Ryan*, 757 F.3d 960, 965 (9th Cir. 2014) (cleaned up). Under the

26     reasonable determination clause, a state court's factual finding is not unreasonable simply

27     because the federal habeas court reaches a different conclusion. *Id*. Courts are to presume

28     that the state court's factual findings are correct unless the petitioner "rebuts the

1    presumption of correctness by clear and convincing evidence." *Id.* "A state court's

2    determination that a claim lacks merit precludes federal habeas relief so long as fair-minded

3    jurists could disagree on the correctness of the state court's decision." *Harrington v.*

4    *Richter*, 562 U.S. 86, 101 (2011) (cleaned up). In analyzing a § 2254 petition, review is

5    limited to the record that was before the state court that adjudicated the merits of the claim.

6    *Pinholster*, 563 U.S. at 181.

7    **4.      DISCUSSION**

8          When reviewing a state court's resolution of an ineffective-assistance-of-counsel

9    claim, the Court considers whether the state court applied *Strickland v. Washington*, 466

10   U.S. 668 (1984), unreasonably. *See Pinholster*, 563 U.S. at 189. Under *Strickland*, a

11   petitioner must show both that (1) counsel's performance was deficient under prevailing

12   professional standards, and (2) he suffered prejudice as a result. *Strickland*, 466 U.S. at

13   687. To prove prejudice, petitioner must show a "reasonable probability that, but for

14   counsel's unprofessional errors, the result of the proceeding would have been different."

15   *Id.* at 694.

16         The Arizona Court of Appeals reasonably applied the *Strickland* standard in denying

17   Melville's claims of ineffective assistance of counsel. The appeals court noted the trial

18   court's finding that, despite the apparent faulty instruction, the judge verbally instructed

19   the jury repeatedly that the State had the burden to prove Melville's guilt beyond a

20   reasonable doubt, and the jurors each had written jury instructions, which also correctly set

21   forth the State's burden. *State v. Melville*, No. 1 CA-CR 15-0259, 2017 WL 1381256, at ¶

22   3 (Ariz. Ct. App. April 18, 2017). In affirming the trial court's findings, the appeals court

23   agreed that "the record supports the superior court's findings regarding *the otherwise*

24   *properly instructed jury.*" *Id.* at ¶ 6.

25         In his Supplemental Reply, Melville argues that the trial court's misreading of the

26   jury instruction amounted to a directed verdict by the judge in favor of the prosecution,

27   which could only be remedied by declaration of a mistrial or granting of a new trial. (Doc.

28   44 at 2-3.) Melville argues the Arizona Court of Appeals should have considered "how

1    reasonable jurors could have understood the charge as a whole," instead of focusing on

2    whether the jury had been "otherwise properly instructed." He relies on *Sullivan v.*

3    *Louisiana*, 508 U.S. 275 (1993) and *Cage v. Louisiana*, 498 U.S. 39, 40 (1990), (standard

4    of review disapproved by *Estelle v. McGuire*, 502 U.S. 62, n.4 (1991)). *Sullivan* and *Cage*

5    are inapposite.

6           The *Sullivan* and *Cage* juries did not receive a proper instruction on the burden of

7    proof required for a criminal conviction.  In *Cage,* the court found that the reasonable doubt

8    instruction could have been interpreted by the jury "to allow a finding of guilt based on a

9    degree of proof below that required by the Due Process Clause." 498 U.S. at 41. In *Sullivan,*

10   which involved the same defective reasonable-doubt instruction, the Supreme Court

11   concluded that the constitutionally-deficient instruction could not be harmless error

12   because a jury cannot reach a proper verdict in the absence of a proper burden-of-proof

13   instruction. *Id.* at 280-82. The court reasoned that, when there is no jury verdict within the

14   meaning of the Sixth Amendment, there is no basis for a harmless error analysis; the entire

15   premise of harmless error is simply absent. *Id.* at 278-280.

16          Unlike *Sullivan* and *Cage,* Melville's jury was "otherwise properly instructed" on

17   the burden of proof. The trial judge verbally instructed the jury that the State had the burden

18   to prove Melville's guilt beyond a reasonable doubt, the jurors each had the written

19   instructions which also correctly set forth the State's burden (as well as the correct version

20   of the misread instruction), and the attorneys argued the correct burden of proof. Thus, the

21   question in Melville's case is whether the trial court's misreading affected the jury's

22   understanding of the reasonable doubt instruction.

23          On this record,  the Arizona Court of Appeals reasonably concluded that the jurors

24   properly understood the jury instructions as a whole. The court stated that the prosecutor

25   and defense counsel's statements during closing arguments reminded the jury of the State's

26   burden of proof, and the fact that the jury found Melville not guilty on one count and could

27   not reach a unanimous verdict on three other charges also indicated the jurors understood

28   the instructions and the State's burden of proof. (Doc. 14-1 at 125 & n.1.) Given the jury's

split verdicts and acquittal, the Court of Appeals reasonably concluded that Melville could not show prejudice from his attorneys' failure to object to or appeal the apparent misreading. Accordingly, the Court concludes Melville has failed to establish that he is entitled to habeas relief.

**5.      Certificate of Appealability**

Before Petitioner can appeal this Court's judgment, a certificate of appealability (COA) must issue.  See 28 U.S.C. §2253(c); Fed. R. App. P. 22(b)(1); Rule 11(a) of the Rules Governing Section 2254 Cases.  "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  Rule 11(a) of the Rules Governing Section 2254 Cases.  Pursuant to 28 U.S.C. § 2253(c)(2), a COA may issue only when the petitioner "has made a substantial showing of the denial of a constitutional right."  The court must indicate which specific issues satisfy this showing. See 28 U.S.C. §2253(c)(3).  With respect to claims rejected on the merits, a petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). For procedural rulings, a COA will issue only if reasonable jurists could debate whether the petition states a valid claim of the denial of a constitutional right and whether the court's procedural ruling was correct.  *Id*.  Applying these standards, the Court concludes that a certificate should not issue, as the resolution of the petition is not debatable among reasonable jurists.

**IT IS ORDERED** Petitioner's Petition for Writ of Habeas Corpus (Doc. 1) is **denied**.

Dated this 4th day of September, 2024.

Jennifer G. Zipps
United States District Judge